Good morning. May it please the Court, Kurt Hermanson on behalf of Mr. Stewart. To this day, no court has let Mr. Stewart have an evidentiary hearing so that he could prove his actual innocence claim. Mr. Stewart's federal petition seeks only that. I'll back you up to try and get the larger picture here because I'm a little confused. We have a significant timeliness issue as to which there are two arguments, two basic issues, and that's the question of whether it was properly filed, what was the date, and also a schluck tolling. But if you got through all that, what are the basic federal issues that are being raised in this habeas? Now, I understand that there's this one issue that you are about to talk about, which is about the state evidentiary hearing. Other than that, now, first of all, was that issue exhausted and does it have to be? It was exhausted. All right. Then you also raised some, I think you also raised some Brady issues. It's not a Brady issue so much as that he has, under California law, a due process. Well, I understand that, but I thought the federal, if you, if schluck apply, if we were dealing with Lee v. Lampert and you've got to buy it all, then you would get to the merits of your claim. So you're telling me that the only merits of your, the only federal merits that you're trying to get to once you get through whatever the timeliness barrier is, is the question of whether you should have had an evidentiary hearing in state court. Is that basically it? And there's no Brady claims? That is basically it. So the, if, once we get past the timeline problems of the petition being timely filed or, you know, within a reasonable time under California law, then the relief sought is for the district, for this court to, for the district court to grant the rent and for Mr. Stewart to be released, unless the state court holds an evidentiary hearing within a reasonable amount of time. There's no claim left about any Brady issue about having withheld either the testimony about what happened at the, at the school or the testimony of, the Jackson testimony that, that released Lee. There's no Brady issue in the case anymore as such. No, Your Honor, we didn't. So there's just one. All right, so that's clarifying. There's just one. I'm sorry. When there is an evidentiary hearing, that issue will come up within the state proceedings, that obviously the prosecution has to turn over exculpatory evidence. The district court, so the claim, if the claim is the no state evidentiary hearing, there would have to be a determination that the rejection of that claim was an unreasonable due process consideration or that there's a federal due process violation based on the lack of a state evidentiary hearing. Is that, am I understanding that correctly? Yes, Judge Ikuda. The state-created liberty interest here is that the state of California has created a liberty interest in a hearing on an just as the United States Supreme Court recognized. So we've got this Cook v. Swarthout problem, which would suggest that normally the state error is not something that's cognizable on habeas. And in any event, we would look at whether you got whatever procedure was due. And so what would be the best argument that your client did not get the procedure in deciding whether or not to give him a state evidentiary hearing? Well, Your Honor, unlike the parole issue that went up to the United States Supreme Court, there the question was, does the sum evidence standard apply? Is there a state-created liberty interest in the sum evidence standard? Here we don't have any sophisticated argument about why there's a due process, right? It's a very simple, straightforward due process claim. Notice and an opportunity to be heard is the most basic, fundamental concept of due process. So he sought an evidentiary hearing and the state court said no, right? So wasn't that notice and opportunity to be heard on his claim to an evidentiary hearing? But the state court created a state-created liberty interest. But it said no. It might have been a mistake to have said no to his claim for an evidentiary hearing, but that would be, seems to fall into the category of state law errors. That's what I'm not understanding. But not when it's an arbitrary state law decision. So we have a body of law from the United States Supreme Court telling us, giving us guidance on when is there a state-created liberty interest and when is there not. And it's not an easy question, but in this case, we have Sandin v. Conner, Wolf v. McDonald, Hicks v. Oklahoma, and all of those cases provide the clearly established law. I guess what I'm not understanding is let's say if we, let's agree, let's assume that there's a state-created liberty interest in the right to an evidentiary hearing when you have an actual innocence claim. And so then he has a right to ask for it and to get some sort of procedure before it's denied. And so he got that. He made his motion for it and the court denied it. And so he got the procedure. He was deprived of it via due process. Why isn't that enough? Because there was arbitrary state action and that's where Wolf v. McDonald comes in. And what was the arbitrary state action? The arbitrary state action is that we have very clear state-created liberty interest in the evidentiary hearing on an actual innocence claim under California. You're essentially saying that the state, at one point you catch it as a 2254-D2 issue, i.e. that they erroneously decided the facts. By not deciding them at all, yeah. I mean by conclusion. Well, they did not decide them at all. I mean they did, the facts being the facts as to whether or not he showed enough to get an evidentiary hearing. And they decided that, right? Yes. So I gather you're saying that there's a 2254-D2 problem in how they decided that, i.e. unreasonably. Correct. And or another way of looking at it is they, under 2254-D1, they unreasonably denied the state liberty interest. But it's substantive is the point. I mean, I think that you weren't clear in answering Judge Ikuda's question that you're making not a procedural claim but at least a quasi-substantive claim about the way in which California handled the petition. Right. California has created a substantive due process right to an evidentiary hearing. And they applied it unreasonably because they should have had an evidentiary hearing, essentially is what you're saying. Right. And I think the key case is the United States Supreme Court case in District Attorney's Office for the 3rd Judicial District versus Osborne. There they talked about the due process, right? And Alaska created a procedure for getting DNA evidence to try to seek exoneration. There the United States Supreme Court said,  And they found that Alaska's procedure, although 46 states created an explicit statutory right to a hearing, Alaska's was a statute not completely about DNA and they had some case law, but the United States Supreme Court said he didn't even try to get a hearing. And that's the basic fundamental issue of due process is a hearing. And so there the Supreme Court said, talked about, and said Alaska's procedure was facially valid and provided an avenue for getting a hearing. Here California, and so recognized that that is a substantive right. I guess I'm still not following because he got the procedure for a determination whether he was entitled to the evidentiary hearing or not. The court just decided he wasn't. So I don't see where the substantive comes in. We can't reach that. That's a question of state law error. But perhaps, you know, maybe we should go back to the timeliness because we don't even get to this. Yeah, I think the timeliness, it's not even a close call. I mean, when looking at the California cases, In re Spears, In re Moss, In re Bower, and In re Burden, those cases stand for the proposition that if it's less than a year, you don't even ask if he had a justification or explanation. So the government says in all those cases there was evidence of investigation, good cause, due process, whatever. There wasn't anything in this case. It was the same claims were raised at both levels of the court. So what was your response to that? I don't, those cases don't say that. I don't read them to say that. But even if they did, the next step of the analysis would be, did he give a justification? And he did. He said that he was at Salinas Valley State Prison, that there was a riot, and they were in lockdown and he was transferred to Calipatria State Prison. But the government says the claims were identical in both filings. So there may have been a lockdown, but it didn't have, there's no reason why it would have an effect on his ability to file before the 100 days had passed. Well, it's, I mean, when we're looking at an actual innocence claim and talking about 100 days, the United States Supreme Court in Kerry v. Skaffold said we have to look at what the state does and what's the state's rule. The state's rule is a reasonable amount of time, and that's a squishy standard. But the California courts have provided guidance. In re Spears, it's 18 months. In re Moss, 9 months. In re Bauer, 1 year. In re Burton, 10 months. But don't we have in the Ninth Circuit at this point a sort of presumptive time that we've kind of, and I guess the Supreme Court did too, kind of made up about what California was likely to regard as reasonable. I don't know if it's 45 days or exactly what it is, but we have a number. What's the number? That applies in death penalty cases where you want to delay things. No, it doesn't. I'm not talking about the California case law. I'm talking about our case law in looking at the California interim periods. Yeah, I'm not sure what that is. It might be 90 days, but it's I think that role plays in. And I'm not sure about that, but I could get back to you. That applies in death penalty cases where you want to delay. Here he has no reason to delay. He just wants a hearing to prove his innocence. If he can't prove his innocence, game over. So he has no reason to delay. Okay, and if I could reserve the remainder of my time for rebuttal. Thank you. Good morning, Your Honor. May it please the Court. I'm Kevin Vietta. I'm the California Deputy Attorney General here for appellee and respondent in this matter. A couple of points if I may respond to the opening argument from Mr. Hermison. First of all, the question about what is 100 days of delay? What's the significance of 100 days of delay? I think the Ninth Circuit has adopted or is down to 90 days. The Supreme Court in Evans v. Chavis said 30 to 60 days. Importantly, they said, building on Kerry v. Saffold, they said that we will find that interval tolling applies in California, assuming that California would adopt the normal period of appeal that applies in states that have appeal from original habeas corpus petitions. But Chafer v. Prosper, I think, is 100 days or 90 days. But that's the range that has been adopted. Some district courts in unpublished decisions have been lower. I think I've seen some as low as 70 days. I haven't seen anyone that's gotten to 60 days yet, although that is the sort of presumptive or the guide given by the United States Supreme Court in Evans v. Chavis. But here he did have an explanation. Well, two points if I may. And the fact that it was in the wrong spot doesn't interest me. So what else do you say about it? Well, I was hoping that would matter to you. What I would say is that in the California courts, and this is from Robbins, In re, Robbins, you can't simply if there's been what appears to be substantial delay and you're trying to explain the basis for that delay. Well, if the presumptive date in the Ninth Circuit is 90 days, it's not very significant. We're dealing with 10 days. So what about the 10 days? Thank you, Your Honor. But the question is whether the California court would accept his explanation as sufficient to explain the delay. And I believe the guide there should be the Supreme Court of California's language in In re, Robbins, 18 Cal 470. And I think it's at page 806, note 29, where they require a petitioner to explain with specificity and to set forth the particulars. And assuming that Mr. Stewart's explanation was intended to explain the 100-day interval between the court of appeal and his filing in the California Supreme Court, there is simply nothing there from which anyone could conclude that either of those causes actually affected his ability to delay. I can certainly conclude that if somebody is under lockdown and then transferred, that it would be difficult for him to get his papers and to get things filled out and that would explain what's a 10-day delay. I think those are reasonable inferences. If he was locked down for 10 days or more, and we have no indication of that, I mean, it might have been an hour of lockdown from all the California Supreme Court could have inferred from Mr. Stewart's explanation. Is there any indication that the California courts are really that sticky? When they don't have any deadline. It's a crazy system. I mean, they have no deadlines themselves. And so, and he's a pro se person. He says, I was on lockdown and I was transferred and we're talking about 10 days. So would they really care about that? There is little law in California on how long is too long in the interval between decisions of a lower court and an upper court. And in the absence of a clear indication to the contrary, I would ask this court to be guided by its existing precedent and by the guidance from the United States Supreme Court in Evans v. Chavis. Which you're saying, which is what? 30 to 60. But our law, you say, is 90 days. Well, I'm saying that this court has gotten to 90. Right, okay. Well, it's gotten to more than 90 in some cases. Yes. I mean, they've acknowledged that 100 or so is too long in some other cases and several months is too long. Sometimes 100 isn't too long. Pardon me? Sometimes 100 days isn't too long. Correct. It might not be too long if there were an adequate explanation. Okay. The second, if the court has no further questions for me on that issue, the second issue that I thought I would address is the question of procedural due process in the existence of a liberty interest. Now, do you agree that it's the only substantive issue underlying this petition? No, I don't think I do, Your Honor. The petition itself had other claims originally. The original? But I understand, and I will ask again, but I understand that opposing counsel is saying that they've been abandoned and the only merits issue that they're proceeding on is this procedural due process claim. The procedural due process claim was arguably, or not clearly, but arguably, in the original petition. And I suppose liberally construing the pleadings of the pro se petitioner, he made an argument that he was entitled to an evidentiary hearing in the California courts. He seemed to abandon that after the magistrate judge, Magistrate Judge Bencivengo, issued her report and recommendation saying that none of the four claims in the original petition seemed to raise a federal claim. And petitioner asked to and was granted permission to file an amended petition where he clarified, I think, that he was making a Brady claim with regard to the alleged impeachment evidence regarding the witness who heard the statement from Mr. Stewart at the football field. That and also the original Jackson information, even though it implicated him? Yes, possibly. Okay. So I believe that there is a substantive claim still before the district court. But only that one? Is that what your argument is? Well, I mean, I think it's somewhat unclear whether the procedural due process claim is before the district court because Mr. Stewart filed an amended petition that didn't include that. Now, if perhaps there's an argument that he was coerced into doing that by the magistrate judge's report and recommendation, I would find that argument not persuasive. But Mr. Horne said that. We have recent case law that in civil cases you don't abandon your first claim. I guess you don't. We used to have case law that said you had to drop things if they were declared invalid. Now we say you don't have to, but at that point perhaps you did. In any event, what do you want to say about the merits of the issue? The merits? Well, I think I guess the merits of the only issue that I really think is before this court now is whether the petition is timely. That is, the district court noted that he had made at least claims under a valid legal theory, which seems to be required to grant a certificate of appealability on a procedural issue. So in other words, you think we should decide only on the timeliness issue instead of that? Yes. Well, I think you should decide the timeliness issue and end this case. Right. But if we don't? If not, then I believe the matter would go back conceivably to look at whether his explanation was adequate for the 100 days of delay. I don't think there's any real argument that he's shown actual innocence. But if it were to go back on the issue of the statute of limitations, in particular to look at the 100-day delay, as I said in my response brief, I think the question remains open about whether he's entitled to the very last of all the possible dates of when the statute of limitations might have started to run. The district court said December 2003 or I think May of 2002. I think if that were to be developed, if that had to be developed, it would have to go back to well before May of 2002. So the district court took and said this is the most favorable possible date, and even with that date it's too late. Precisely. And that was the date of, I think, Daniel's declaration. And so your argument is that the district court, you would then be able to argue before the district court that some earlier date was the learning, the factual predicate. Is that correct? Yeah, exactly. Exactly. And if there are no other questions. Well, no, I have other questions. I would like you to walk through the schlup version of the Lee versus Lambert actual innocence, not a federal constitutional theory on the merits of the actual innocence, which I gather there are different standards. And I guess I'd begin by saying that I didn't find your analysis in your brief terribly helpful because, well, essentially because they all turn on making credibility determinations without actually having the people standing there. And given the fact that in the original trial you didn't have a bunch of terribly credible people to start out with, it's not horribly plain why these people were any worse. Any worse than the Parrish brothers? Parrish brothers and, I mean, for example, you faulted one of the declarations because it referred to a killing rather than. . . Yes, Mr. Johnson did. Right. But that was also true of the testimony at trial about what Stewart said at the college. Yes, Your Honor. He said he killed somebody. Yes, Your Honor. So there's no better and no worse. And it was relied upon. I think what I would have to agree that Stewart's statement at the football field that he had killed someone certainly could be interpreted as indicating that he was referring to the murder of Gee Whiz that took place an hour after the shooting at the Parrish brothers. It was presented in support of his conviction for the crime that he was being tried for. I'm sorry if the Court found my analysis unpersuasive or not very helpful. For reasons like that. I mean, in other words, there was just no better and no worse than what was actually at the trial. I think Judge Moskowitz did a remarkably good job in explaining why Mr. Stewart had not shown actual innocence, and it really comes down to the circumstantial evidence other than the direct evidence of the Parrish brothers' identity. Well, what is that? Once you take the two Parrish. . . I mean, let's assume that after the episode with Jackson and the fact that Lee has been exonerated because they misidentified him, there's no reason to think they identify Stewart any better, and let's take them out. Then what's the evidence? And I would simply adopt Judge Moskowitz's analysis, and that is really, mostly, it's the car. And the car. . . But it's all over the place about the car. It was a rust-colored car. It was a light car. The brothers said. . . You said that Daniels wasn't to be believed because she said it was a rust-colored car, but the Parrish brothers said it was a rust-colored car. Well, actually, what the. . . At times. What several people said was that the color of the car was weird or unusual, and I think that's clearly established in the record. But there was not just the evidence from the Parrish brothers, which didn't simply talk about color but also talked about anke rims, with which I was not familiar until recently. But those rims are quite distinctive. Everyone. . . But you think that you can convict somebody beyond a reasonable doubt because of the car they were in? I mean, that can't be right. Well, the car they were in, the statement of Stuart's mother, that he's in the car in the vicinity at the time. You couldn't go to trial on those two things and think you're going to get a conviction. So Judge Moskowitz was also focusing on there was gunpowder on the car, that he was cleaning the car at night. Is there anything other than those four data points? No. I think Judge Moskowitz covered the record completely. And do you think if you went to a jury, or I guess I would like to know how, if you went to a jury with those four facts, it was arguably his car, although maybe it wasn't because other people said it was a different color. His mother said he was there. There was gunpowder on the car, which could have meant he was there, but it had nothing to do with the crime. And whatever the fourth one was. If I might, I would say that if he's there, it's hard to argue that he had nothing to do with the crime. That is, he's there when the gang sign is shown, it's his car. Why? There were other witnesses, weren't there? Or there could have been. He could have been there, but it had nothing to do with the crime. Perhaps. I mean, that's certainly hypothetically possible. But whoever was driving that car had something to do with it.  There are lots of people who are around the crimes and don't do the crimes. But in this circumstance, whoever was driving the car certainly had something to do with the crimes because the car followed, went after the Parrish brothers' car, pulled up next to them, and there were a series of six shots fired. If you think it's the same car. Yes. And there were uninvolved witnesses who identified it as a BMW with the weird color. Who was that? Pardon me? Who? I don't have his name, but I can find it if you want. The person who was there at the time? Yes. There was a motorist who identified it as a BMW. The district court refers to him as a bystander and had earlier referred to that person's name in the statement of the facts. So I could pull that out in a moment if you like, Your Honor. Or I can submit that later. But there were two bystanders who made observations consistent with it being Mrs. Stewart's car that was being driven that day at that time in that area by her son.  Thank you, Your Honor. Thanks. Thank you. Regarding the In re Robbins and my friend's reliance on In re Robbins, as I stated in the reply brief, In re Robbins is not on point at all regarding timeliness. In re Robbins is a California case talking about death penalty cases and specifically dealing with application of the Supreme Court policies regarding cases arising from death penalty. You're kind of borrowing the 90 days from Robbins to begin with, aren't you? I mean, or this court was. I mean, where did the 90 days come from other than Robbins? Right. And that's a death penalty case. I know. But where are we getting the 90 days benchmark from to start out with? Well, I think that if it's from somewhere, it's from Robbins. And it doesn't make sense, though, because the real test is reasonable amount of time. And, Carrie, the United States. Yeah, but the Supreme Court obviously is anxious to come back. It happened in the California cases by coming up with some sort of a benchmark so that we're not spinning wheels every time this issue comes up. And so we, the Ninth Circuit, seems to have lit on 90 days. Do you agree with that much? In the death penalty context, yes. Just in general? No, I don't. Do you think the Ninth Circuit has no benchmark at this point? I don't think there should be a benchmark because the United States. But is there one in the case law now? I believe it is 90 days. Okay. But I don't believe that it applies or should apply in the non-death penalty context because. . . Does it in our cases? No. In our cases, it does not apply the 90 days. Well, if they do, they're contrary to. . . Well, that may be, but we're a three-judge panel. I'm trying to find out what the Ninth Circuit law is on this. In the non-death penalty context, I don't think there's a benchmark. And if there were, it would be contrary to Kerry. The United States Supreme Court has said you look to what the state, how the state applies the time in this rule. And I've given the court a number of cases showing how the state applies it. Mills v. Martell has been withdrawn, and so I can't, you know. . . But the reasoning there is the same as, exactly the same as in my opening brief. In re. Spears, in re. Moss, in re. Bower, in re. Burden is the California law applying the time in this rule. The United States Supreme Court has said that's what we look to. That's what this court must look to is how the state applies it. So F.S. v. Chavis, was that a death penalty case or was that just a regular habeas? It must have. . . I would assume it must have been, and I don't know that that was a. . . I think it was. . . Was that even a California case? Yes, and that's where they said the benchmark was 30 to 60 days. So I guess if we don't, if the Ninth Circuit doesn't, in your view, doesn't have a benchmark for non-death penalty cases, do we then go back to Evans v. Chavis under your. . . And Kerry. Under your analysis. Evans v. Chavis and Kerry. I talked about them in my opening brief quite a bit, and it says, page 17 of my opening brief, the United States Supreme Court and Kerry says the state's interpretation of its own time and the standard should control the issue. But then what do we do with Evans, which suggests we think 30 to 60 is about right? That's what most states do. Right, but we have to look at California. The Supreme Court has to create a rule that's going to work for all 50 states, and so that's why there's this flexible rule. That's not true, because most states have their own time in that period. And this was, they were trying to apply, they were saying, well, most states, 30 to 60, and we think that's probably right in California. This was a California case. But they also say that the state's own interpretation of the time and the standard must apply, and so that requires that this Court look at what the state does. And Ray Robbins is not on point, because it's a death penalty analysis, and the cases that I cite, Spears, Moss, Bower, and Burdan control. That's 18 months, 9 months, 1 year, and 10 months. We're not even close to that. And even if the benchmark is 90 days, that's a benchmark, and we have 100 days here. Okay, thank you very much. Thank you. Thank you for your arguments. The case of Stewart v. Case is submitted.
judges: Zipps, Berzon, Ikuta